UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MELISSA J. BENTLEY,

    Plaintiff,

v.                                        19-CV-00739 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

---

## DECISION AND ORDER

On June 6, 2019, Plaintiff Melissa J. Bentley brought this action under the Social Security Act ("the Act"), seeking review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Dkt. 1. On October 28, 2019, Bentley moved for judgment on the pleadings. Dkt. 8. On January 27, 2020, the Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 12. On February 14, 2020, Bentley replied. Dkt. 13.

For the reasons stated below, this Court grants Bentley's motion in part and denies the Commissioner's cross-motion.

## PROCEDURAL HISTORY

On January 14, 2016, Bentley applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Dkt. 8-1, at 2. She claimed she had been disabled since December 31, 2011, due to degenerative changes of the lumbar spine and thoracic spine, right knee abnormalities, obesity, and major

depressive disorder. *Id.* at 2, 4. On March 30, 2016, Bentley received notice that her application was denied because she was not disabled under the Act. *Id.* at 2. She requested a hearing before an administrative law judge ("ALJ"), which occurred on June 26, 2018. *Id.* At the hearing, Bentley amended her alleged onset date to January 14, 2016 and withdrew her DIB application. *Id.* The ALJ then issued a decision on July 30, 2018 regarding the SSI application, confirming the finding that Bentley was not disabled. Dkt. 6, at 25. Bentley appealed the ALJ's decision, and the Appeals Council affirmed the ALJ's decision on April 9, 2019. Dkt. 8-1, at 2. Bentley then commenced this action.

## LEGAL STANDARD

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (*quoting Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II. Disability Determination

In denying Bentley's application, the ALJ evaluated Bentley's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 416.920(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 416.920(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* § 416.920(a)(4)(iii). But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* § 416.920(a)(4)(iv); *id.* § 416.920(d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* § 416.945. After determining the claimant's RFC, the ALJ completes step four. *Id.* § 416.920(e). If the claimant can perform past relevant work, she is not disabled and the analysis ends. *Id.* § 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* § 416.920(a)(4)(iv); *id.* § 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 416.920(a)(4)(v), (g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). More specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform

4

alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I. ALJ Decision

The ALJ analyzed Bentley's claim for SSI under the process above. At step one, the ALJ found that Bentley had not engaged in "substantial gainful activity" since the amended alleged onset date of January 14, 2016. Tr. 13.[1] At step two, the ALJ found that Bentley had the following severe impairments: degenerative changes of the lumbar spine and thoracic spine, right knee abnormalities, obesity, and major depressive disorder. Tr. 13. At step three, the ALJ found these impairments, alone or in combination, did not meet or medically equal any of the impairments listed in the regulations. Tr. 14-15. At step four, the ALJ determined that Bentley retains the RFC to perform light work. Tr. 15. Specifically, the ALJ found that Bentley:

> can occasionally kneel and squat; is limited to simple, routine tasks; can have only occasional interaction with supervisors, coworkers or the public; and use of judgment is limited to simple decisions when dealing with changes in the work setting.

*Id.* Completing step four, the ALJ found that Bentley had no past relevant work. Tr. 24. At step five, relying on the testimony of a vocational expert and considering Bentley's RFC, age, education, and work experience, the ALJ determined jobs

---

[1] Dkt. 6 is the transcript of proceedings before the Social Security Administration. All references to Dkt. 6 are denoted "Tr. __."

5

existed in significant numbers in the national economy that Bentley could perform. *Id.* These occupations included an electrical accessories assembler, housekeeping cleaner, and palletizer. Tr. 24-25. Accordingly, the ALJ found that Bentley was not disabled, as defined in the Act, from the alleged onset date through the date of the decision. Tr. 25.

## II. Whether the ALJ Properly Applied the Treating Physician Rule to the March 2018 Opinion of Dr. Meka

Bentley argues that the ALJ improperly applied the "treating physician rule"—particularly regarding the opinion of Dr. Naga Meka, M.D., who treated Bentley for sixteen months. Dkt. 8-1, at 16; *see* Tr. 449-54. Dr. Meka provided a March 2018 medical source statement, which opined that, in an eight-hour workday, Bentley could lift ten pounds occasionally, five pounds frequently, sit for five hours, stand or walk for one hour, and would require a break every two hours to relieve pain by lying down or reclining. Tr. 449-54. According to Bentley, this opinion provided significant functional limitations that are more restrictive than the ALJ's RFC determination. Dkt. 8-1, at 17; *see* Tr. 449-54. The ALJ assigned "little weight" to this opinion. Tr. 23. Bentley argues that the ALJ erred by (1) failing to assess the appropriate factors, and (2) failing to provide good reasons while assigning "little weight" to Dr. Meka's treating physician opinion. Dkt. 8-1, at 17-21. Bentley requests that the Court vacate the Commissioner's decision and remand for further administrative proceedings or reverse the decision entirely. *Id.* at 22. The Commissioner argues that the ALJ granted appropriate weight to the

medical opinion and substantial evidence supported the final decision of the ALJ. Dkt. 12-1, at 3.

### A. Assessment of Treating Physician Opinion Evidence

As Bentley's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule. 20 C.F.R. § 416.927; *see, e.g., Barco v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018). If a physician has engaged in the primary treatment of the plaintiff, "[the Act] recognizes a 'treating physician' rule of deference." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)). Determining the appropriate weight to assign a treating physician's opinion, an ALJ must follow specific procedures from Social Security regulations and Second Circuit precedent. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

First, the ALJ must determine if the treating physician's opinion is entitled to controlling weight. *Id.*; *see* 20 C.F.R. § 416.927(c)(2). Controlling weight is assigned to a treating physician's opinion if "the nature and severity of [an] impairment[] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *see Estrella*, 925 F.3d at 95; *Burgess*, 537 F.3d at 128. "The ALJ cannot arbitrarily substitute [her] own judgment for [a] competent medical opinion." *Rosa*, 168 F.3d at 79 (quoting *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).

7

Second, if the ALJ determines a treating physician's opinion is not entitled to controlling weight, then the ALJ must determine how much weight, if any, to give a treating physician's opinion. *Estrella*, 925 F.3d at 95. In doing so, the ALJ must "explicitly consider" the four nonexclusive *Burgess* factors: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)); *see also* 20 C.F.R. § 416.927(c)(1)-(6) (statutory basis for factors assessing weight of treating physician's opinion). Failure to "explicitly consider" the *Burgess* factors is a procedural error. *Estrella*, 925 F.3d at 96.

In addition to the treating physician's rule, courts must provide "good reasons" for their decision regarding the weight given to the treating physician's opinion. *Id.* "At both steps [determining controlling weight and then weight generally], the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating [physician]'s . . . opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also* 20 C.F.R. § 416.927(c)(2) (statutory basis specifying that the ALJ "will always give good reasons in [their] notice of determination or decision for the weight [they] give your treating [physician]'s medical opinion"). When assigning weight to the treating physician's opinion, if the ALJ has not provided "good reasons," courts cannot conclude that the error was harmless. *See Estrella*, 925 F.3d at 96; *see also Greek v.*

8

*Colvin*, 802 F.3d 370, 376 (2d Cir. 2015) ("The ALJ's failure to provide adequate reasons for rejecting [a treating physician]'s opinion was not harmless."). Thus, the Second Circuit has instructed that courts should not hesitate to remand when the ALJ does not comprehensively set forth "good reasons" for the weight assigned to a treating physician's opinion. *Halloran*, 362 F.3d at 33. But, if "a searching review of the record" satisfies the court "that the substance of the treating physician rule was not traversed," the court shall affirm the ALJ's decision. *See Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32).

### B. The ALJ Erred Procedurally When Evaluating the March 2018 Opinion of Dr. Meka

Here, the ALJ assigned "little weight" to Dr. Meka's March 2018 medical source statement. Tr. 23. The ALJ only provided the following in her assessment of Dr. Meka's March 2018 opinion:

> The [ALJ] gives little weight to Dr. Meka's March 7, 2018, assessment because it is not consistent with the record as a whole, including Dr. Meka's own earlier conclusion that the claimant is not a candidate for disability.

Tr. 23. "Although substantial evidence supports the ALJ's decision at step one to assign less-than-controlling weight to [Dr. Meka]'s opinion, the same is not true of its decision at step two to assign 'little weight' thereto." *See Estrella*, 925 F.3d at 96. Because the ALJ did not assign controlling weight to Dr. Meka's treating physician opinion, the ALJ was required to "explicitly consider" the four *Burgess* factors to determine the weight of the opinion—and failed to do so. *See id.* at 95.

The ALJ did not "explicitly consider" the first *Burgess* factor—"the frequency, length, nature, and extent of treatment." *See id.* at 95-96. Dr. Meka treated

9

Bentley seven separate times over a sixteen-month period. *See* Tr. 372, 374, 403, 406, 409, 427, 480. Nowhere in the ALJ's decision is the length, nature, and extent of treatment from Dr. Meka analyzed. *See generally* Tr. 11-25. Neither did the ALJ discuss that Dr. Meka regularly prescribed medications for Bentley's back pain and lumbar disc herniation. *See* Tr. 372, 374, 403, 406, 409, 427, 480. The ALJ also failed to discuss the second *Burgess* factor—"the amount of medical evidence supporting the opinion"—and the fourth factor—"whether the physician is a specialist."[2] *See Estrella*, 925 F.3d at 95-96.

Instead, the ALJ only considered explicitly the third *Burgess* factor—"the consistency of the opinion with the remaining medical evidence"—in the assessment of Dr. Meka's opinion. *See* Tr. 23. Dr. Meka's March 2018 opinion may be inconsistent with not only other medical opinions, but also his own treatment notes. In his treatment notes, Dr. Meka stated Bentley may be "exaggerating her symptoms." Tr. 403, 406. Specifically, on April 21, 2017, Dr. Meka wrote, "I don't think she will be a candidate for disability." Tr. 23, 415. Yet, at the same appointments, Dr. Meka prescribed several medications to alleviate pain from the lumbar disc herniation, including Mobic, Lyrica and Gabapentin/Neurotin. Tr. 371, 374, 403, 406, 409, 427. Based on the record, the ALJ may have concluded correctly that Dr. Meka's opinion was inconsistent with the other evidence. But the ALJ did

---

[2] Although the ALJ did not apply the fourth *Burgess* factor—"whether the physician is a specialist,"—this failure "may be harmless" because Dr. Meka was Bentley's primary care physician, not a specialist. Tr. 20; s*ee Duncan v. Saul*, No. 17-CV-573, 2019 WL 3219287, at *4 (W.D.N.Y. July 17, 2019) (acknowledging failure to apply the fourth *Burgess* step was harmless for a primary care physician).

10

not provide comprehensive reasoning to reach this conclusion.[3] A more thorough examination of Dr. Meka's notes and observations—"instead of focusing only on the evidence that did not support [Dr. Meka's] conclusions—may have led to greater weight being assigned to [this] opinion[]." *See Duncan v. Saul*, No. 17-CV-573, 2019 WL 3219287, at *4 (W.D.N.Y. July 17, 2019).

Thus, the ALJ failed to consider explicitly the factors as required. Specifically, the ALJ erred by not discussing the frequency, length, nature, and extent of treatment and the amount of medical evidence supporting the opinion. The ALJ's failure to consider explicitly the *Burgess* factors was a procedural error. *See Estrella*, 925 F.3d at 96. Because the ALJ erred procedurally, the Court must search the record to ensure that the treating physician rule was not traversed—"*i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight' to [Dr. Meka]'s opinion." *See id.* (quoting *Halloran*, 362 F.3d at 32).

### C. The ALJ Traversed the Treating Physician Rule, Failing to Provide Good Reasons Evaluating Dr. Meka's March 2018 Opinion

The ALJ must comprehensively set forth "good reasons" when assigning weight to a treating physician's opinion. *See Burgess*, 537 F.3d at 129-30 (citing *Halloran*, 362 F.3d at 33). The ALJ lists only one reason for assigning "little weight" to Dr. Meka's opinion: inconsistency with the record as a whole, citing Dr. Meka's prior statement that Bentley is not a candidate for disability. Tr. 23. After

---

[3] If Dr. Meka's treatment or, specifically, the March 2018 medical source statement was unclear, the ALJ had "an affirmative duty" to contact Dr. Meka for clarification prior to rejecting the Dr. Meka's treating physician's opinion. *See Duncan*, 2019 WL 3219287, at *5 (quoting *Selian*, 708 F.3d at 420).

11

a searching review of the record, the Court concludes that the substance of the "treating physician rule" was traversed because the ALJ did not comprehensively set forth "good reasons."

First, the ALJ's reasoning of inconsistency with the record as a whole is insufficient under the regulations and case law to discount Dr. Meka's March 2018 treating physician's opinion. *See Parker v. Comm'r of Soc. Sec. Admin.*, No. 18 Civ. 3814 (PAE) (HBP), 2019 WL 4386050, at *9 (S.D.N.Y. Sept. 13, 2019). Courts in this district have previously rejected as conclusory the statement, "inconsistent with the record as a whole," which cannot be used as a "good reason." *See Duncan*, 2019 WL 3219287, at *4-5 (concluding "inconsistent with the record as a whole" and "consistent with the record" are conclusory statements, which cannot be considered "good reasons"); *Tuper v. Berryhill*, No. 17-CV-6288P, 2018 WL 4178269, at *5 (W.D.N.Y. Aug. 31, 2018) (finding "inconsistent with the treatment record" to be far too conclusory to constitute a "good reason"). In this case, the ALJ's statement that Dr. Meka's March 2018 treating physician's opinion was "not consistent with the record as a whole" is not a "good reason." *See* Tr. 23; *Parker*, 2019 WL 4386050, at *9; *Duncan*, 2019 WL 3219287, at *4-5.

Furthermore, the ALJ specifically did not give "good reasons" for only citing Dr. Meka's April 2017 statement, which doubted whether Bentley would be a candidate for disability. *See* Tr. 23. Although Dr. Meka examined Bentley seven times over sixteen months, the ALJ cited a single statement from one examination to support inconsistency with the record. *See* Tr. 23. In a 2017 treatment note, Dr.

12

Meka noted "[he] did not think [Bentley] will be [a] candidate for disability." Tr. 411. This statement was made nearly a year before Dr. Meka's March 2018 medical source statement. *See* Tr. 23. In the same 2017 treatment note, Dr. Meka increased Bentley's pain medication for her lumbar disc prolapse. *See* Tr. 410-11. While acknowledging the April 2017 statement was not an extensive function-by-function evaluation, the ALJ assigned "some weight" to this single statement. Tr. 23. But the ALJ provided no explanation why she gave this single statement by Dr. Meka on April 2017 more weight and used it to discount Dr. Meka's treating physician's opinion from March 2018. *See* Tr. 23. Nor did the ALJ acknowledge or discuss Dr. Meka's notes from any of the other visits, or their treatment relationship generally. *See id.*

While disability is an issue reserved to the ALJ for judgment, *see* 20 C.F.R. § 416.927(d)(1), the Second Circuit has long held "a treating physician's statement that the claimant is disabled cannot itself be determinative." *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Green-Younger*, 335 F.3d at 106. Similarly, the Western District has recognized "just as a treating physician's assertion that a claimant is disabled does not per se establish eligibility for disability benefits, a physician's assertion that a claimant is not disabled is also not conclusive on the issue of disability." *Parish v. Apfel*, 70 F. Supp. 2d 279, 283-84 (W.D.N.Y. 1999) (emphasis omitted). The ALJ's sole reliance on the April 2017 statement does not qualify as a "good reason" to support the ALJ's conclusory statement of "inconsistency with the record." Therefore, the ALJ's single, largely conclusory

13

statement, despite contradicting Dr. Meka's own assessment, did not merit more weight without "good reasons."

Additionally, the conflicting opinion of Dr. Rosenberg, a one-time consultative internal medicine physician, does not provide a "good reason" for diminishing Dr. Meka's March 2018 opinion. *See Estrella*, 925 F.3d at 98. Rather than addressing Dr. Meka's opinion on the merits, the ALJ credits a one-time consultative internal medicine examination by Dr. Rosenberg, which was assigned "great weight." *See* Tr. 22. Within the ALJ's analysis of Dr. Rosenberg's findings, "great weight" is assigned as a result of Dr. Rosenberg's own findings and "treating source evidence reviewed above." *Id.* The Second Circuit has "frequently cautioned that ALJs should not rely heavily on the finding of consultative physicians after a single examination." *Estrella*, 925 F.3d at 98 (citing *Selian*, 708 F.3d at 419); *see also Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) (extensively discussing and concluding one-time consultative examinations should be given limited weight). In the assessment of Dr. Meka's treating physician's opinion, the ALJ made no effort to reconcile the contradictory findings between the Dr. Meka and Dr. Rosenberg. Tr. 22-23; *see Selian*, 708 F.3d at 419 (concluding a "good reason" was not found where the ALJ failed to reconcile a one-time consultative examination with a treating physician's opinion); *see also Estrella*, 925 F.3d at 98. Nor is the ALJ's decision clear on exactly what "treating source evidence reviewed above" results in assigning "great weight" to Dr. Rosenberg. *See* Tr. 22. If an effort had been made to reconcile

14

the inconsistent opinions of Dr. Meka and Dr. Rosenberg, the ALJ may have provided "good reasons." *See Estrella*, 925 F.3d at 98; *Selian*, 708 F.3d at 419.

Finally, because the ALJ may have reached a different RFC if she had "explicitly considered" Dr. Meka's March 2018 treating physician's opinion, the Court cannot conclude that failure to apply the *Burgess* factors and provide "good reasons" was harmless. *See Dunbar v. Comm'r of Soc. Sec.*, No. 1:18-CV-1350 (WBC), 2020 WL 1649823, at *5 (W.D.N.Y. Apr. 3, 2020) (an error applying the treating physician rule "cannot be deemed harmless when proper application of the treating physician rule may have led to a different conclusion") (citing *Schaal*, 134 F.3d at 504-05); *see also Duncan*, 2019 WL 3219287, at *5; *Thomas v. Colvin*, 302 F. Supp. 3d 506, 511 (W.D.N.Y. 2018) (concluding the ALJ's error was not harmless as the treating physicians' opinions directly conflicted with the ALJ's RFC, which, if credited, may have altered the RFC). More weight assigned to Dr. Meka's opinion may have resulted in a different RFC, which could have altered the vocational expert's finding of an alternative job available for Bentley.[4] *See Dunbar*, 2020 WL 1649823, at *5 (concluding "meaningful[] analy[sis]" of the *Burgess* factors, specifically frequency, length, nature, and extent of treatment and consistency, may have led to a different disability outcome, thus the ALJ's failure to do so was not harmless); *Duncan*, 2019 WL 3219287, at *5 (concluding failure to address three of

---

[4] Questioned by Bentley's lawyer in front of the ALJ, the vocational expert concluded full-time work would generally not be available to someone with the limitations set forth by Dr. Meka's March 2018 opinion. *See* Tr. 76.

15

four factors was not harmless error as the ALJ may have assigned more weight to the treating physician's opinion, thus resulting in a different RFC).

Absent "good reasons," the Court must conclude the ALJ's decision traversed the treating physician rule when considering Dr. Meka's March 2018 opinion. *See Estrella*, 925 F.3d at 98. The ALJ was required to apply the treating physician rule, failed to consider explicitly the first and second *Burgess* factors and, ultimately, only considered one *Burgess* factor—inconsistency with the record—in a conclusory manner. Because the ALJ procedurally erred and then did not provide "good reasons," the ALJ traversed the substance of treating physician rule. *See id.*

This conclusion does not entitle Bentley to an outright reversal of the denial of benefits. *See Burgess*, 537 F.3d at 132. The ALJ must comprehensively weigh Dr. Meka's opinion using the *Burgess* factors and provide good reasons in the analysis. *See id.*; *see also Estrella*, 925 F.3d at 98.

Because the ALJ did not properly apply the *Burgess* factors to Dr. Meka's treating physician's opinion, this Court remands this case to the Commissioner for reconsideration of Bentley's claim consistent with the procedural mandates set forth by the Act and Second Circuit precedent. On remand, the ALJ should "explicitly consider" all four *Burgess* factors when determining the appropriate weight of Dr. Meka's opinion. "[Bentley] is entitled to a comprehensive statement as to what weight is given and of good reasons for the ALJ's decision." *See Burgess*, 537 F.3d at 132.

## CONCLUSION

For the reasons stated above, Bentley's motion for judgment on the pleadings (Dkt. 8) is **GRANTED** in part and **DENIED** in part, and the Commissioner's cross motion for judgment on the pleadings (Dkt. 12) is **DENIED**. The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   August 12, 2020
         Buffalo, New York

                                    _____
                                    JOHN L. SINATRA, JR.
                                    UNITED STATES DISTRICT JUDGE